IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| APRIL DAVIS, | * | |
| Plaintiff, | * | |
| | * | Case No. TJS-23-1171 |
| v. | | |
| | * | |
| WASHINGTON METROPOLITAN AREA TRANSIT AUTHORITY, *et al.*, | * | |
| Defendants. | | |

\* \* \* \* \* \*

**MEMORANDUM OPINION**

This case is assigned to me for all proceedings by the consent of the parties, pursuant to 28 U.S.C. § 636(c). ECF Nos. 15, 18 & 19. Pending before the Court is Defendant Washington Metropolitan Area Transit Authority's ("WMATA") Motion to Enforce Settlement ("Motion") (ECF No. 20). Having considered the parties' submissions (ECF Nos. 20, 21 & 22), I find that a hearing is unnecessary. *See* Loc. R. 105.6. Because the parties made a contract to settle this matter, the Motion will be granted.

**I.      Introduction**

Plaintiff filed this lawsuit in the District Court of Maryland for Prince George's County. ECF No. 3. In her complaint, Plaintiff alleges that she was injured because of the negligence of WMATA and its General Manager. *Id.* at 6. Plaintiff's alleged injury occurred in Capitol Heights, Maryland. *Id.* WMATA timely removed the case to this Court pursuant to the WMATA Compact, *see* Md. Code., Transp. § 10-204(81) (granting original jurisdiction over suits against WMATA to the United States District Courts). In July 2020, the parties began negotiating settlement. ECF No. 20-1 at 2. On July 20, 2023, Plaintiff accepted WMATA's offer to settle the case. *Id.* About an hour

after Plaintiff accepted WMATA's offer, a paralegal employed by Plaintiff's attorney notified WMATA that Plaintiff "called and has now rejected the offer." ECF No. 20-3 at 1. Thereafter, WMATA filed its Motion, which is ripe for decision.

## II. Discussion

### A. Factual Background

The facts relevant to deciding WMATA's Motion are not in dispute. On July 12, 2023, a paralegal employed by Plaintiff's counsel emailed counsel for WMATA to discuss settlement. ECF No. 20-3 at 6. After multiple emails were exchanged, on July 17, WMATA sent the following message to the paralegal: "WMATA will offer Plaintiff $5,000, if Plaintiff executes WMATA's standard Release Agreement that contains both a confidentiality clause and non-disparagement clause." *Id.* at 3. Plaintiff then made counteroffers, which WMATA rejected, and WMATA restated that "[i]ts offer of $5,000 with other conditions remains open" until a stated deadline on July 20. *Id.* at 2. At 3:47 p.m. on July 20, the paralegal emailed WMATA: "Plaintiff accepts the offer." *Id.* at 1. WMATA immediately responded: "Very well. I will get a Release to you no later than tomorrow. I need the executed notarized Release before I can request the settlement check." *Id.* Less than one hour later, the paralegal emailed WMATA again: "Client called and has now rejected the offer." *Id.* WMATA emailed back: "Legally, I do not think she can. She accepted. WMATA will move to enforce the settlement agreement." *Id.*

### B. Choice of Law

Under the WMATA Compact, WMATA is liable for torts that its employees commit "in the conduct of any propriety function, in accordance with the law of the applicable signatory (including rules on conflict of laws)." Md. Code, Transp. § 10-204(80); *see Robinson v. Washington Metro. Area Transit Auth.*, 774 F.3d 33, 38 (D.C. Cir. 2014). Maryland adheres to the

2

*lex loci delicti* rule to determine the applicable law in tort actions. *Philip Morris Inc. v. Angeletti*, 358 Md. 689, 744 (2000). Under this rule, the "substantive tort law of the state where the wrong occurs governs." *Hauch v. Connor*, 295 Md. 120, 123 (1983). Because the alleged tort took place in Maryland, the substantive law of the Maryland governs this case.

  C.  **Enforceability of Settlement Agreements Under Maryland Law**

Settlement agreements are enforceable as independent contracts, and "public policy considerations favor the enforcement of settlement agreements." *Alston v. TowneBank*, No. GJH-20-690, 2022 WL 971008, at *6 (D. Md. Mar. 31, 2022) (internal quotation marks omitted); *Copeland v. Dapkute*, No. PWG-17-1566-PWG, 2018 WL 5619672, at *5 (D. Md. Oct. 30, 2018) (explaining that a "settlement agreement is nothing more or less than a contract" and that "the question of whether to enforce a settlement agreement is governed by standard contract principles"); *Bernstein v. Kapneck*, 290 Md. 452, 459 (1981) ("[P]articularly in this era of burgeoning litigation, compromise and settlement of disputes outside of court is to be encouraged.").

"A district court has 'inherent authority, deriving from [its] equity power, to enforce settlement agreements.'" *Churchill v. Prince George's Cnty. Pub. Sch.*, No. PWG-17-980, 2019 WL 528180, at *3 (D. Md. Feb. 11, 2019) (quoting *Hensley v. Alcon Labs, Inc.*, 277 F.3d 535, 540 (4th Cir. 2002) (explaining that "resolution of a motion to enforce a settlement agreement . . . may be accomplished within the context of the underlying litigation without the need for a new complaint," even though the motion "draws on standard contract principles")). The question of whether to enforce a settlement agreement is governed by "standard contract principles," because a settlement agreement is nothing more nor less than a contract. *See Topiwala v. Wessell*, 509 F. App'x 184, 186 (4th Cir. 2013) (per curiam); *see Hayward v. Brown*, No. PWG-15-3381, 2017 WL

2117364, at *2 (D. Md. May 16, 2017) ("Under Maryland law, '[s]ettlement agreements are enforceable as independent contracts, subject to the same general rules of construction that apply to other contracts.'" (quoting *Maslow v. Vanguri*, 896 A.2d 408, 419 (Md. Ct. Spec. App. 2006) ) ), *aff'd*, 696 F. App'x 102 (4th Cir. 2017) (per curiam). Ordinarily, as a matter of Maryland contract law, a party seeking to enforce a settlement agreement "must show (1) offer and acceptance, (2) consideration, and (3) an agreement containing definite and material terms." *Rohn Prods., Int'l v. Sofitel Cap. Corp. USA*, No. WDQ-06-0504, 2010 WL 681304, at *3 (D. Md. Feb. 22, 2010) (citing *Cochran v. Norkunas*, 919 A.2d 700, 708 (Md. 2007)).

After "ascertain[ing] whether the parties have in fact agreed to settle," the Court must "discern the terms of that settlement." *Power Servs., Inc. v. MCI Constructors, Inc.*, 36 F. App'x 123, 125 (4th Cir. 2002) (per curiam) (quoting *Moore v. Beaufort Cty.*, 936 F.2d 159, 162 (4th Cir. 1991)). If there is a substantial factual dispute over the settlement agreement's existence or its terms, the Court must hold an evidentiary hearing. But if "a settlement agreement exists and its terms and conditions can be determined, as long as the excuse for nonperformance is comparatively unsubstantial, the court may enforce the agreement summarily." *Churchill*, 2019 WL 528180, at *3 (quoting *Swift v. Frontier Airlines, Inc.*, 636 F. App'x 153, 156 (4th Cir. 2016) (per curiam)).

    **D.**    **The Settlement Agreement is Enforceable**

The Court finds that the parties have entered into an enforceable settlement agreement. WMATA offered to pay Plaintiff $5,000 as a full and final settlement of Plaintiff's claim. WMATA's offer had the following material terms: WMATA would pay $5,000 to Plaintiff in exchange for Plaintiff's execution of WMATA's standard Release Agreement, which contains both

a confidentiality clause and a non-disparagement clause. Plaintiff accepted WMATA's offer. When Plaintiff changed her mind, it was too late; a valid and enforceable contract had been formed.

The Court rejects Plaintiff's argument that the settlement agreement cannot be enforced because "WMATA never spoke directly to [Plaintiff] nor did they present a Release for her review and/or execution." ECF No. 21 at 1-2. First, Plaintiff was represented by counsel at all relevant times. WMATA's counsel would have breached their ethical duties if they had directly communicated with a represented person. Second, it is of no moment that WMATA did not present its standard Release Agreement to Plaintiff, or that Plaintiff did not actually sign it, before she accepted WMATA's offer. Plaintiff accepted the offer without requesting to review the Release Agreement. Contrary to Plaintiff's argument, there *was* a complete meeting of the minds. When Plaintiff changed her mind, it was too late.

### III.   Conclusion

For these reasons, and for those other reasons stated in WMATA's Motion, the Motion to Enforce Settlement (ECF No. 20) is **GRANTED**. Plaintiff April Davis will be ordered to tender to WMATA an executed release in the form filed at ECF No. 20-4 within 14 days of the date of this Order. If Plaintiff fails to comply with the accompanying Order, she will be directed to show cause why she should not be held in contempt and why this case should not be dismissed with prejudice.

Date:   November 8, 2023                                  /s/
                     Timothy J. Sullivan
                     Chief United States Magistrate Judge